UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-10284-RGS

WILLIAM MCDERMET

v.

PORCH.COM, INC.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

April 16, 2019

STEARNS, D.J.

William McDermet, proceeding *pro se*, brought this lawsuit on January 9, 2019, in Essex Superior Court against Porch.com, Inc. (Porch)[1] alleging violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 (Count I), the Massachusetts Telemarketing Solicitation Act (MTSA), Mass. Gen Laws ch. 159C, and Mass. Gen Laws ch. 93A (together Count II).[2] McDermet states that Porch or its agents made multiple unsolicited calls to his home and mobile phones, even though his phone

---

[1] McDermet dismissed claims against another named defendant, CT Install America, LLC, on February 27, 2019. *See* Dkt # 11.

[2] McDermet is an attorney who has a history of personally prosecuting similar lawsuits in the Massachusetts courts. *See* Def.'s Mem. (Dkt # 13) at 2 n.2.

numbers are enrolled in the state and federal Do Not Call registries. Porch removed the case to the federal district court on February 14, 2019, and now moves to dismiss the Complaint for want of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[3] For the reasons to be explained, Porch's motion to dismiss for lack of personal jurisdiction will be denied, while its motion to dismiss for failure to state a claim will be granted in part and denied in part.

## BACKGROUND

The facts, viewed in the light most favorable to McDermet as the nonmoving party, are as follows. McDermet is a resident of Ipswich, Massachusetts, who listed both his home and mobile phone numbers on the state and federal Do Not Call registries.[4] McDermet, nonetheless, allegedly received over 130 unsolicited phone calls from Porch or its agents, among

---

[3] Porch also moves to dismiss the Complaint for lack of Article III standing under Fed. R. Civ. P. 12(b)(1), contending that McDermet "fails to adequately plead that his injury is fairly traceable to Porch's conduct or that his claims can be redressed by Porch." Def.'s Mot. (Dkt # 12) at 1. Although Porch does not support this contention in its Memorandum, the court finds, for the reasons that will follow, that McDermet's claims satisfy the "familiar amalgam of injury in fact, causation, and redressability." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016).

[4] The Complaint is a bit opaque, but seems to suggest that McDermet registered his home phone on August 16, 2003, and his cellphone on January 28, 2010. Compl. (Dkt # 4-1) ¶ 8.

others, between April of 2016 and November of 2018.[5]  Nineteen of the calls inquired whether he "needed home improvement services."  Compl. (Dkt # 4-1) ¶ 10.  Some callers expressly disclosed an affiliation with Porch.  On January 21, 2018, McDermet sent a cease and desist letter to Porch demanding that it stop the calls and provide him with the names of the callers.  *Id.* ¶ 19.  After receiving no response, McDermet filed this lawsuit on January 9, 2019.

## DISCUSSION

### *Personal Jurisdiction*

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination."  *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).  The prima facie standard directs the court to "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  *Massachusetts Sch. of Law*

---

[5] There is some disparity in pleadings as to the number of unwanted calls alleged: McDermet states in his Opposition that there were 139 calls, Pl.'s Opp'n (Dkt # 16) at 2, but 135 appears to be the handwritten number inscribed in the Complaint, Compl. (Dkt # 4-1) ¶ 9, while a count of the specific calls alleged in the Complaint totals 137.  The discrepancies have no bearing on any issue of significance.

*at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). McDermet bears the burden of establishing that the court has personal jurisdiction over Porch. *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008).

To exercise personal jurisdiction, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Since "the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States," it makes sense to dispense with the statutory inquiry and "proceed directly to the constitutional analysis." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) (citations omitted). Here, because McDermet relies on a claim of specific jurisdiction, the constitutional test "has three components: relatedness, purposeful availment, and reasonableness." *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019). The First Circuit has articulated this three-part test as follows:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the

state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 60 (1st Cir. 2002) (citation omitted).

Porch's argument against personal jurisdiction is grounded on its status as a Delaware corporation with a principal place of business in Seattle, Washington, and the purported failure of the Complaint "to allege any connection between Porch and Massachusetts – let alone between Porch's purported conduct in Massachusetts and [McDermet's] claims." Def.'s Mem. (Dkt # 13) at 9; *see also Cardenas v. Spinnaker Resorts, Inc.*, 2017 WL 3315285, at *6 (D.N.J. Aug. 3, 2017) (finding a lack of personal jurisdiction because, among other things, the "[p]laintiff fail[ed] to allege that the [defendant] made the unsolicited telephone calls that gave rise to this action").

The argument overlooks the generous reading of the Complaint that the prima facie standard requires. First, McDermet directly alleges that Porch or agents acting on its behalf called him on many occasions.[6] These

---

[6] The Complaint specifically alleges that "[d]efendants, or their agents, telephoned" McDermet, that "[s]ome of these contractors indicated that Porch.com or CT Install America were the lead generators," and that McDermet sent a letter to Porch demanding that it "stop calling him." Compl. (Dkt # 4-1) ¶¶ 9, 13, 19. Porch, nonetheless, argues that McDermet fails to allege that it called him and takes issue, in particular, with the phrase

calls form the basis of Porch's alleged violations of the Do Not Call prohibitions. Second, the Complaint alleges that Porch or its agents called McDermet's mobile and home phone numbers that have a Massachusetts area code (978), an allegation sufficient to establish that they purposefully availed themselves of the privilege of doing business in the Commonwealth. *See Abramson v. Caribbean Cruise Line, Inc.*, 2014 WL 2938626, at \*9 (W.D. Pa. June 30, 2014) ("By initiating a call to . . . a number [with a Pennsylvania area code], it can be said that Defendant CCL 'expressly aimed their conduct at Pennsylvania' because the number was associated with the State of Pennsylvania."); *Luna v. Shac, LLC*, 2014 WL 3421514, at \*3 (N.D. Cal. July 14, 2014) ("[W]here Shac intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action, Shac expressly aimed its conduct at California."); *cf. Daynard*, 290 F.3d at 62 ("Even in cases where the defendant was not physically present in the forum, where the defendant initiated the transaction by mailing or calling the plaintiff in the forum and when the defendant contemplated that the plaintiff would render services in the forum . . . many courts have found jurisdiction.") (citation omitted).

---

"lead generators," which it contends typically refers "to data collection and not the initiation of telephone calls." Def.'s Mem. (Dkt # 13) at 3 n.5.

Third, the Gestalt factors support the conclusion that jurisdiction is reasonable,[7] especially given the court's deference to McDermet's choice of forum and the Commonwealth's interest in adjudicating a dispute between a foreign corporation and a Massachusetts resident.  *See Sawtelle*, 70 F.3d at 1395.[8]

### Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the

---

[7] These factors are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[8] Porch has also not demonstrated that the exercise of jurisdiction in Massachusetts "is onerous in a special, unusual, or other constitutionally significant way."  *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996), quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994).  While Porch only addresses the relatedness prong in its Memorandum, it "does not concede that [McDermet] has met, or can meet, all three prongs."  Def.'s Mem. (Dkt # 13) at 6 n.8.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013), quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

### 1. TCPA

McDermet alleges that Porch violated 47 U.S.C. § 227(b)(1)(A)(iii), by calling his cellphone using an automatic telephone dialing system (ATDS). This claim requires that McDermet allege that (1) Porch called his cellphone, (2) using an ATDS, (3) without his prior express consent. *See Jones v. FMA All. Ltd.*, 978 F. Supp. 2d 84, 86 (D. Mass. 2013). Porch contends that McDermet "lacks facts supporting his allegation that the calls were made using an artificial or pre-recorded voice or an ATDS." Def.'s Mem. (Dkt # 13) at 14. As it happens, McDermet addressed this same argument in one of his prior cases. "A well-pled ATDS claim relies 'on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used.'" *McDermet v. Trinity Heating & Air, Inc.*, 2018 WL 840743, at *3 (D. Mass. Feb. 12, 2018) (citations omitted). Here, I find that McDermet has plausibly

pled an ATDS claim.  The Complaint alleges that Porch or its agents called his cellphone on specified dates from specified numbers and, that while he usually spoke with a "live person," he received nineteen calls that "began with a mechanical or recorded voice."  Compl. (Dkt # 4-1) ¶¶ 9-10, 14; *see also McDermet*, 2018 WL 840743, at *3 (finding a plausible ATDS claim where, among other things, McDermet alleged "specific dates and the exact number of solicitation calls received on noted dates," and that he "was met with silence or a prerecorded message on several occasions").  The Complaint also alleges that these calls were made to McDermet without his permission and in disregard of his written demand that Porch stop calling him. *See id.* at *3 (holding that sending "letters demanding Trinity stop contacting him on two occasions . . . lead[s] to a reasonable inference that Trinity's contact occurred without McDermet's express consent.").

McDermet next alleges that Porch's ATDS calls to his cellphone violated 47 U.S.C. § 227(b)(1)(B).  This section, however, only prohibits (in relevant part) a person from initiating a "telephone call to any *residential telephone line* using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(B) (emphasis added).  Because McDermet specifically alleges that Porch used an ATDS to exclusively call his cellphone, and not his home

telephone, Compl. (Dkt # 4-1) ¶ 25, this claim must be dismissed. *See McDermet v. John C. Heath, Attorney at Law, PLLC*, 2018 WL 627371, at *2 (D. Mass. Jan. 30, 2018) (dismissing § 227(b)(1)(B) claim on the same grounds).

Undaunted, McDermet alleges that Porch violated 47 U.S.C. § 227(c) by making unsolicited calls to his home phone telephone number, after it was listed on the state and federal Do Not Call registries.[9]   Section 227(c)(5) allows "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" to bring a lawsuit.  Since McDermet alleges that he has, and that Porch or its agents are responsible, the § 227(c)(5) claim is adequately pled.

Finally, McDermet alleges that Porch violated 47 U.S.C. § 227(e)(1) by blocking his caller identification device.[10]  The Truth in Caller ID Act (TCIA), 47 U.S.C. § 227(e), amended the TCPA to prohibit "any person within the United States, in connection with any telecommunications service or IP-

---

[9] McDermet mistakenly cites § 227(c)(3)(G), which authorizes the Federal Communications Commission (FCC) to implement regulations governing access to the Do Not Call list.  *See* Def.'s Mem. (Dkt # 13) at 15 n.12.  The mistake does not vitiate the readily discernible claim.

[10] McDermet alleges that he was either unable to redial the numbers shown on his caller identification screen or that it displayed no number on at least ten separate occasions.  Compl. (Dkt # 4-1) ¶¶ 15-16.

enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." The TCIA, however, does not allow for a private right of action (as McDermet previously learned). *See McDermet*, 2018 WL 627371, at *3 ("[S]ection 227(e)(6) specifies that the 'chief legal officer of a State . . . may bring a civil action [under this act], as *parens patriae*, on behalf of the residents of that state.' Accordingly, it is clear that Congress did not create a private right of action to enforce the TCIA.").[11] The court will not permit McDermet a second opportunity to shop this claim and will therefore dismiss it.

## 2. MTSA

McDermet alleges that Porch violated the state analog MTSA, namely by repeatedly calling his registered Do Not Call numbers, by using a pre-recorded message, by blocking his caller identification screen, and by not disclosing the name of the telemarketing company or ultimate seller. Porch, in response, argues that McDermet "merely regurgitates the elements of the

---

[11] McDermet argues that the TCIA provides a private right of action under 47 U.S.C. § 227(b)(3). However, "it is improper to apply the language of subsection 227(b)(3), which does grant a private right of action, to the TCIA, which does not." *McDermet*, 2018 WL 627371, at *3.

statute without facts connecting Porch to any of the calls." Def.'s Mem. (Dkt # 13) at 16. This is not accurate.

Section 3 of the MTSA provides, in relevant part, that "[a] telephone solicitor shall not make or cause to be made an unsolicited telephonic sales call to a consumer: (i) if the consumer's name and telephone number appear on the then current quarterly no sales solicitation calls listing . . . or (iv) by use of a recorded message device." Mass. Gen. Laws ch. 159C, § 3. Section 4 further states that "[n]o telephone solicitor shall intentionally cause to be installed or shall intentionally use a blocking device or service to circumvent a consumer's use of a call identification service or device." *Id.* § 4. And section 5A provides, in pertinent part, that within the first minute of a call, "[a] telephone solicitor shall disclose . . . (ii) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (iii) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call." *Id.* § 5A(a).

According to the Complaint, Porch or its agents made unsolicited calls to McDermet's registered home and mobile telephone numbers. *Compare McDermet*, 2018 WL 840743, at *2 (finding a plausible § 3(i) claim) *with Jones v. Experian Info. Sols., Inc.*, 141 F. Supp. 3d 159, 163 (D. Mass. 2015)

(dismissing the MTSA claim because the plaintiff "failed to allege that he received unsolicited calls on any number that, at the time of the calls, was both registered to an individual and on the state or federal do-not-call list."). Nineteen of the calls that McDermet received "began with a mechanical or recorded voice" inquiring whether he "needed home improvement services." Compl. (Dkt # 4-1) ¶ 10. In some instances, he was either unable to redial the number shown on the caller identification screen, or no number at all was displayed. And in most cases, the caller either did not or refused to disclose the identity of the telemarketing company or the ultimate seller, even when asked.

### 3. Mass. Gen. Laws Chapter 93A

Completing the circuit, McDermet alleges that Porch's conduct was unfair and deceptive within the meaning of the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A. "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 25 (1st Cir. 2001), quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). While Porch is correct in asserting that "'a statutory violation is not a *per se* violation of ch. 93A,'" and that "'[m]ere negligence' is insufficient to

maintain a Chapter 93A claim," *McDermet*, 2018 WL 627371, at *4, these defenses ring hollow against allegations of repeated violations of state and federal law, all involving the same registered telephone numbers. Negligence is doing it once, or maybe even twice, but not nineteen times.

## ORDER

For the foregoing reasons, Porch's motion to dismiss the Complaint for lack of personal jurisdiction is <u>DENIED</u>. Porch's motion to dismiss the Complaint for failure to state a claim is <u>ALLOWED</u> with respect to the claims asserted under 47 U.S.C. §§ 227(b)(1)(B) and (e)(1), but is otherwise <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE